Yes, thank you, your honor. Good morning, your honors, and may it please the court. My name is Elizabeth Rodriguez and I'm appearing on behalf of Petitioner Anival Gregorio-Carrillo and I would like to reserve three minutes for rebuttal. Watch the clock, I'll try to help you. Okay, thank you. There were several issues presented on this case, however, in the interest of time, I would like to focus my attention on two particular issues. One of them is whether the BIA erred by failing to address petitioner's argument regarding DACA and whether it constitutes an admission when a finding in the affirmative would have affected the outcome of proceedings. And the second issue is whether there was an egregious violation of petitioner's rights when he was detained and placed in removal proceedings while still arguably under protection of DACA status. As to the first issue, I would argue that the court did commit reversible error because in failing to address the issue, the BIA ignored what could have ultimately been a termination of proceedings given the government would not have been able to prove their charge of removability. I'm not sure I fully understand your argument on this point, so let me see if you can help me. You agree that the IJ addressed your client's DACA, I'll use the word status without making that a judgment, addressed the notion that your client claimed that he was protected by DACA, correct? That the IJ addressed it, yes. Right, and that the BIA seems to have said, we adopt the IJ's findings. It's right in its opinion. So is it your position that by failing to address this argument more specifically, the BIA erred? Yes, because if you look at the BIA decision, I believe it just briefly talks about the egregious violation and Pereira, so it doesn't specifically touch on... No, it doesn't. It doesn't specifically address the DACA, but it does seem to adopt the IJ's findings and conclusions, and so my question is, is that sufficient? I would say it's not, your honor. I think... Sorry, I'm looking for the exact language, but I'm sure you know the record better than I. I thought our cases said that the IJ, to the extent it wants to adopt the BIA, to the extent it wants to adopt the IJ's reasoning, can simply do it. I would argue that they would have had to actually give reasonable consideration to that specific issue, and to that I would turn the the BIA has to give reasonable consideration to an issue that is dispositive. So that is what I'm arguing today, that the BIA did not fully address and should have, and for that reason, potentially... Let's assume for a moment that my colleague is correct, that our case law says that if the BIA adopts the reasoning of the IJ, that is sufficient. What concerns me here is whether the IJ actually dealt with the DACA issue. It seemed to believe that the DUI conviction in 2015 disqualified him, but I don't think he made an official finding that that terminated his DUI. Was it necessary for the IJ to make such a finding, or could the IJ just assume that because of the DUI that it automatically terminated the DACA situation? I would argue that they would not just be able to assume that DACA was terminated, in part because the DACA status does give a purpose or a benefit to these individuals, these youths, so they would have had to have some type of notice which wasn't the case here. They just automatically assumed. I'm sorry. Is there a notice? The way I read DACA, it says we're extending some benefit. I don't know what to call it. It's not a status. We're not going to exercise our prosecutorial discretion not to remove people who meet the following qualifications, and one of them your client doesn't meet because of his conviction. So it may just be initial, you know, he never had DACA status because he had the conviction. Why isn't that more appropriate way to read it? I'm sorry, your honor. I don't think I understand. No one's ever awarded DACA status. I mean, you don't get a certificate from the government that says you're a DACA person. You have the ability to argue that because I meet all these qualifications, something good happens to me. But one of the qualifications is not having a conviction, and the IJ, although I agree with Judge Smith, perhaps not in the clearest terms, said he's not a DACA person because he's got this conviction. So why isn't that a correct ruling? I would say it's not a correct ruling because even if he had gotten a conviction, my argument is that he would have still had to have notice because his expiration of his DACA wasn't set to expire until I think later. It was supposed to expire June 11th of 2017. So my argument is that he would have had to have notice even if he had a DUI conviction. They can't just automatically say, you know, we're going to not prosecute anymore, and we're going to go ahead and pick you up in your house. I think a lot depends on what DACA is, and my colleague addressed that a little bit, which is that DACA is a decision by the previous administration that said we're going to exercise our prosecutorial discretion not to prosecute if certain conditions are met. What the IJ inarticulately seemed to say is one of these conditions is no longer met, so you cannot interpose this, if you will, affirmative defense. I think the IJ looked at DACA as an affirmative defense. Why was that wrong? Well, I think if we look into the similarities to, for example, TPS and what that's afforded to TPS individuals, it's very similar to that specific status, to where these particular people in this TPS status are, again, granted the work authorization, they're able to leave the country, they have all these quote-unquote rights, which is very similar to DACA. So what we're arguing is that, like TPS, there would have had to be some type of notice prior to that. Aren't those a little bit different? I think the program you're talking about actually does have paperwork and the like, and people can say I have these rights. Is that not correct? Well, for DACA, as a lawyer, I mean, you still get an approval notice, you do get an EAD card, you have to submit a lot of documents, you have to prove that you've been here prior to your 16th birthday, you have to prove that you've been here continuously, that you were here at the time that DACA was enacted. There's very extensive paperwork that has to be provided, which we are arguing is similar to what would be an admission into the country. Let me ask you the question slightly differently. Put aside your notice argument. Is there any dispute that the DUI conviction disqualified your client from being able to renew later? Your argument is that he was still in DACA status until they took it away. I understand that. My question is, is there any argument in this case that whenever the termination, if you will, occurred, or would have occurred, that the DUI status was sufficient to terminate it? No, I don't believe it would have been sufficient. Your argument is one of timing, right? They had to actually withdraw his DACA status or terminate it before the judge could treat him as not being subject to DACA. Well, I think the issue is whether or not the DACA is considered an admission, because then the charge would not have been correct. So, when they took him into custody and they issued this notice to appear, they said that he was entry without inspection. So, we're arguing that the DACA status, in essence, is an admission, so he shouldn't have been charged under entry without inspection. Do you have any data that suggests that DACA is, in fact, grants an admission status? I've never seen such a case. No, there isn't, Your Honor. That's why we are arguing today that it's similar to the decision that this court made in Ramirez v. Brown. That is specifically concerning TPS, but what we're arguing is that the status is similar. See, my concern is this one. I think, if I were on the Supreme Court, I would probably hold that President Obama correctly promulgated DACA, but the arguments that he did are all that he didn't give people a status. He was exercising prosecutorial discretion. So, your argument sort of cut against the validity of DACA. If he was really giving an immigration status, he probably overstepped his bounds. If he was only exercising prosecutorial discretion, I think the argument for DACA is better. Are you willing to sign a petition that John Kerwin should be on the Supreme Court? He's young, he's handsome, he's smart. I don't want to be, but I guess my concern is, if we were to adopt your argument, wouldn't that cast doubt on the constitutionality of DACA? If it really did give you status like TPS, how can the President do that on his own? Well, I think what we're asking here is to look at the process of how these individuals get DACA and see it as an admission, in particular, just for the purposes of the charge and, for example, for adjustment of status. Also, I would ask the court to look at, for example, there's many instances in memorandums of ICE where it says that DACA, while it does not give a specific status, those individuals are not under unlawful status. Can I ask you a question? I'm trying to figure out here, what is in the final analysis relief that you're going to get for your client? Because even assuming we agree with you, he's now lost his DACA status, essentially, because of his conviction, and he just gets turned around and gets deported again. Well, that would not change the status of him being admitted and overstaying his stay. He would still possibly be eligible for adjustment of status. That isn't in the briefs, but considering if he were eligible for adjustment of status, for example, if he was married or whatnot, it wouldn't change that status. So, he'd still be able to do these things. Well, he wasn't successful before. Well, he wasn't doing adjustment of status at that time. So, what you're saying is you're going to go back and argue something different? I mean, it's possible. We don't know at this point. That's either here or there. It just didn't seem to me like there was a clear road forward for your client. Yes. I would know very quickly. Do you want to save the balance of your time? Yes. I'll reserve my time now, Your Honor. Thank you. Okay. Very well. Let's hear from Mr. Pennington, then, please. Thank you, Mr. Mayor. Good morning. I'm Greg Pennington for the Attorney General. Your voice is cracking up. I don't know what the cause of that, but just be aware of it, okay? Okay. My apologies if it is. Since the opening argument focused... I can't hear. We're having difficulty hearing you, counsel. Are you on a cell phone or a landline? Yes, Judge. Yes, Judge. I'm on a cell phone at home. I didn't have any trouble with the test call. Do you have a landline you can call back on? I can try a different cell phone really quick. Well, I'll tell you what. We can hear you now. Fine. You may just need to keep your mouth close to the phone. Okay. I'll try that. Thank you. So, for DACA, the way he framed his argument as an immigration judge, it was not that it was wrongfully terminated. And this is page 126 in the record. He argued that it was an admission, and his argument was based on the court's decision. And so, the court's decision, if you look at Judge McCown's, the first line in her opinion, it says this is a statute of immigration decision. And so, that was based on a statute that granted lawful status. And the court's decision hinged on that. DACA, there's no statute or regulation. It's just an agreement between the government and a non-citizen that meets certain eligibility to remove them during this period. Let me ask you a question about that position, because I'm not sure I understand it fully. Let's assume that Mr. Gregorio did not have a DUI conviction. Is it your position that he was removable? Once the government decided to serve him with a notice to appear, it showed its intention to put him into a removal proceeding, that it was ending its agreement. And if you look at the- Well, but now you're making the argument that the government, the current government, is making to the Supreme Court, and I'm not sure they're going to buy it. So, your argument is, DACA is not binding on the next administration, because we've chosen in our prosecutorial discretion to go after him. If that's your argument, it seems to me we need to wait to see what the Supreme Court does with the case in front of it. If your argument is instead, no, we couldn't, maybe we couldn't have, but the DUI is the important thing, that's a different matter. So, I want to figure out what your argument is. Well, my argument is based on what USCIS has laid out, is that it can be terminated at any point if the government does not want to further exercise its discretion in a specific case. Okay, let's assume you lose on that argument, that we don't buy it. Okay, so now tell me why procedurally, because I don't think your co-counsel, your friend disagrees that the conviction some way or another would disqualify Mr. Gregorio from remaining in DACA, why this was handled correctly procedurally. Well, procedurally, and I would go back to my initial point, is if you look at what he said to the immigration judge during the hearings, he said that this wasn't that the status or whatever he had was lawfully terminated, it was an admission argument. And he repeated this in his opening brief to this court, that this was not a termination argument before the immigration judge. So, procedurally, he was just saying that this was an admission and the immigration judge disagreed, saying that, well, all you've shown me is that you have an employment authorization card. And he cited this court's decision saying that that's not sufficient to constitute an admission. And that's when he gets up to the board and he starts to make this new argument that he was never supplied with this I-797 notice of termination. And that's where the board kind the immigration judge's decision in footnote two of its order, saying that it agrees with the immigration judge. So, that's where there's kind of a disconnect into what the immigration judge held and what the board held. But it sounds like you are, in fact, making, in the early part of your argument, you're making the right argument in the cases before the Supreme Court. You're saying that it's the current position of the government that it can terminate DACA anytime it wants to. And the Supreme Court has to decide that. So, are you conceding that, at the very least, we need to send this back, grant a stay of deportation until we know what the Supreme Court's going to do? No, not in this case, because it presents that broader question. This case presents the question of somebody who's no longer eligible based on a conviction. And that's the immigration judge kind of side addressed that, even though the argument wasn't made. We've got to have due process here. Whatever your position about DACA, it does confer some, at the very least, due process rights. And in this case, it seems like the government is saying, we're not going to follow DACA anymore. And you don't tell the IDA. I didn't see the IDA saying, okay, because you have this DUI, this is the reason why I think DACA doesn't apply to you anymore. So, he's kind of left in a legal limbo. You don't know why the government can prosecute when the DACA is not officially terminated. The Supreme Court's got the argument about whether or not it can be. I'm troubled about how we can adopt your position without flying in the face of the very points that are before the Supreme Court. Well, I would also bring up the point that Judge Ezra made earlier, is that he doesn't have DACA anymore. Even if it wasn't properly terminated, he didn't have it renewed. He didn't apply for renewal. So, his DACA status or presence ended in 2017. And he hasn't presented anything to show that he sought renewal or anything since then. I mean, we're here three years later that he's probably been out of DACA. So, when was he in DACA status, assuming that it wasn't terminated because of his conviction, was he in DACA status at the time the NTA was served? At the time the NTA was served, he would have been. At the time he filed the motion to terminate and the judge sustained the charge of inadmissibility, he was out of DACA status. And there's no indication that he's sought to renew it or has anything else that would allow him to have lawful presence. So, your argument doesn't need to be that we can revoke it anytime we want. Your argument in this case is that there's no evidence that he was in DACA status at the time that the motion to terminate was filed. And I take it the other side's argument is, but he was when the NTA was served. So, address their argument. What's the relevant time, assuming DACA status gives you something? The relevant time, and this would have been kind of reflected, and this goes to the narrower point, if the court doesn't address the broader argument of whether they can terminate it on a case-by-case basis, is that during that routine records check, and this is from the I-213, is that he was found to have a conviction, and he was subject to this arrest warrant, and they went and placed him, arrested him, and then served the NTA. I would say that the narrower point there is that terminated it in his case because he was no longer eligible by virtue of his conviction. Well, I'm interested in the question Judge Smith asked earlier. Is this an affirmative defense? Or is it something that delineates the person's status at the time that the NTA was served? In other words, you served an NTA saying he was removable for entering the country without permission. Ms. Rodriguez says, nah, he entered the country with permission because he retroactively got permission through DACA. And so, is it an affirmative defense or is it the status? I would say it would be more akin to an affirmative defense because it doesn't grant any status. And it was very specific in the application itself. It doesn't grant any lawful status. It's just that you won't accrue any unlawful presence in the United States. It doesn't waive any prior periods of unlawful presence. Or once you fall out of status, it doesn't secure any lawful presence after. It's just the terminated person period where you're not going to be determined to have unlawful presence in the United States. But nothing grants an actual status. So, I guess it would be more akin to an affirmative defense, which the immigration judge just didn't buy here. But I want to make Ms. Rodriguez's argument for her and she can rebut me if I think she's wrong. Her argument is at the time the NTA was served, uh, because he was in DACA at that point and hadn't, uh, that, that he was lawfully present and that something was required to take him out of DACA status. Not just simply you noticing that there was a conviction in the record. How do you respond to that? I would respond first that he didn't make that argument to the immigration judge. He didn't make that argument until his status had already expired. The first time he made this termination argument was to the board. And like I said, in his, in the transcript of the hearing, the judge specifically was trying to flesh out his argument. And he said, this is not a termination argument, judge. This is an admission argument. So, I would say that he didn't really raise that argument until it was already moved. Because he had already had that lawful presence, his DACA had expired and he didn't seek to renew it, likely because of his conviction would have made him ineligible. Has he weighed the argument by failing to raise it before the IJ? I would argue that he has. Even in his opening brief at page five, he says, this was a termination argument, or not, this was not a termination argument. It was an admission argument based strictly on this court's decision. And that's why the IJ's decision in the footnote, and the IJ didn't really address the argument either. He was talking about it in the context of admission. We're not hearing you very well right now. I'm losing him here. I think I understand what he meant, but I kind of lost him there. I'm sorry. Can you hear me now? Yes. So yes, I would argue that he hasn't properly preserved it because when he raised it to the IJ, he adopted the IJ's reasoning, which didn't really address the termination argument because he didn't make a termination argument. The IJ did hold that DACA didn't apply because of the conviction, correct? Correct. The immigration judge at the end of his discussion on DACA says that it appears to be terminated. And that upon termination, he remained in the same position and charged as removable. So I think the judge in addressing it was more talking about how inadmissibility provisions because he went back to the same status he had before DACA. So I'm trying to figure out, as Judge Smith was at the beginning, how the immigration judge treats the conviction. And I'm trying to figure out whether he treated the conviction as ending DACA status for making Mr. Gregorio ineligible for it or whether he I'm trying to look at his opinion and interpret it. What do you think he was saying? Well, the immigration judge goes through and sends this court's decision. Give me the page of the opinion that you're talking about. This is page 409 of the record. Okay. And so he cites this court's decision in, or she cites this court's decision in Guevara saying that an employment authorization card does not constitute an admission. And then saying further that his DACA status appears to have been terminated. And therefore, he went back to his original unlawful status, which still made him subject to the provisions of inadmissibility rather than deportability. So he was subject to- Are those alternative holdings in your view? Or is the second one just dictum? I would say that the second one is just elaboration on why he was still subject to inadmissibility provisions. It was addressing his admission argument, not whether it was properly terminated, not whether he was entitled to receive a termination notice from USDIS or some other indication that allowed him to contest his termination. It was just saying that it appears to have been terminated. And I would say that that's just an elaboration because he was never presented with, was this lawfully terminated? That was not the argument that was made. Okay. Counselor, your time is expired. Do either of my colleagues have additional questions for the government? No, Judge Hurwitz asked the question I was planning on asking. So no, I don't. Very well. So thank you, counsel, for your argument. So we'll go back to Ms. Rodriguez. You have a little time left. Yes, Your Honor. So first as to what the immigration judge referred to in Guevara, I would just distinguish that case and noting that in that case, it was specifically talking about an employment authorization that was given prior to the adjustment of status processing. So in this case, it's different because the employment authorization was given after he had already applied and been given the relief. Also, even if it was initially or at some point an admission argument, based on that admission, again, the government would not have been able to prove the removability charge and that would have inevitably come to termination. So I would just... Well, that's why I want to ask you because you seem to be clashing with the government on what was argued when. I understand your admission argument. But did you make an unlawful termination argument anywhere below? No. Not that I can recall right at this moment. I'm sorry, Your Honor. I think what we have to look at though is what we did argue is that because they did go pick him up and he was still in the status that they shouldn't have picked him up to begin with. And then also because of the admission that they wouldn't have been able to sustain the charge. Either way, it would have been terminated. So that was the point of the whole argument for it to be terminated due to the inability of them to sustain the charge. Well, that's why I was asking earlier whether you were kind of changing jump from one boat to the next, so to speak. I think it was relevant because either way, what we were trying to find was the termination. If they can't sustain the charge, then there All right. Any other questions by my colleagues? Not for me, sir. Thank you. Very well. Your time is up then, counsel. So thanks to both Ms. Rodriguez and Mr. Pennington. The case just argued is admitted.
judges: M. Smith, Jr., Hurwitz, Ezra